UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IVAN AMNAY,

    Plaintiff,

v.                                           CASE NO. 8:21-cv-2610-WFJ-CPT

SELECT PORTFOLIO SERVICING,
INC.; WILMINGTON TRUST, N.A.;
and DOES 1-10 INCLUSIVE,

    Defendants.
_____/

**ORDER**

Before the Court is Defendants' Motion to Dismiss Amended Complaint (Dkt. 22) and Plaintiff's response (Dkt. 27).[1] After careful consideration of the allegations of the amended complaint (Dkt. 19), the argument of counsel, and the applicable law, the Court concludes the motion should be granted with leave to amend.

**PERTINENT ALLEGATIONS**

The following facts are taken from the amended complaint, which this Court accepts as true and construes all factual, not conclusory, allegations in the light

---

[1] The instant motion is not filed on behalf of Defendant "Does 1–10 Inclusive," which is not defined by either the initial or amended complaint. Dkt. 1-4; Dkt. 19.

most favorable to the non-moving party, Plaintiff.[2]  Dkt. 19.  Plaintiff owned residential property (not his homestead) at 2660 Orangewood Court, Palm Harbor, Florida, which was encumbered by a mortgage.  *Id*. ¶¶ 7, 8.  After Plaintiff filed bankruptcy under Chapter 7, the bankruptcy trustee deeded the property to Defendant Wilmington Trust, N.A. ("Wilmington Trust").  *Id*. ¶ 9.  The trustee's deed is dated October 10, 2018, and was recorded January 22, 2019.  *Id*.

According to Plaintiff, the subject property fell into disrepair while being rented by Wilmington Trust as lessor with the assistance of Defendant Select Portfolio Servicing, Inc. ("SPS").  *Id*. ¶10.  "SPS approached Plaintiff with an offer to modify the lien and payments due under the loan, including waiving arrearages, if Plaintiff would agree to take over the care and maintenance" of the Orangewood Court property.  *Id*.  Plaintiff claims he agreed on the condition he would rent the property and retain rental payments.  *Id*.  Plaintiff alleges he made "substantial repairs" to the property, including replacing the roof, installing a fence, repairing the plumbing, and painting.  *Id*.

Plaintiff alleges that pursuant to this "agreement," SPS followed up with a written "Lien Modification Agreement," which became effective November 1, 2019.  *Id*. ¶ 11.  The modification agreement is attached to the original complaint.  *Id*.; Dkt. 1-4 at 15–22.  The modification agreement identifies Plaintiff, not

---

[2] *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

Wilmington Trust, as the property owner. *Id*. The agreement is signed by Plaintiff and by Defendant "Select Portfolio Servicing, Inc., Attorney in Fact for Wilmington Trust, N.A." Dkt. 1-4 at 18–19.

Plaintiff alleges he rented the property to a third party on November 29, 2019, and made payments under the modification agreement to SPS for almost two years. Dkt. 19 ¶¶ 13, 14, 15. He states he also paid the insurance on the property. *Id*. ¶ 16.

When the November 2019 lease expired, Plaintiff attempted to rent out the property through a broker. *Id*. ¶ 18. According to Plaintiff, Wilmington Trust and SPS contend the modification agreement "is no longer in place as the result of a Settlement Agreement entered into between Plaintiff and Defendant SPS in a separate civil action." *Id*. Plaintiff alleges the settlement agreement "does not specify the [modification agreement] and which Settlement Agreement is expressly limited to the release of specific claims in the separate action." *Id*. Plaintiff contends that by signing the settlement agreement, he did not relinquish his interest in the property or interest in the modification agreement because the settlement agreement "does not release or terminate the [modification agreement] (which was not part of the separate action) and no discussions, consultations, or agreements were ever made to effectively cancel or terminate the [modification agreement] or Plaintiff's status as the Property Owner as identified therein." *Id*. ¶ 19.

The amended complaint in Count I seeks a declaration of Plaintiff's rights under the modification agreement. *Id*. ¶¶ 25, 28. Specifically, Plaintiff seeks a declaration that he is the property owner, that the settlement agreement in a separate case has no effect on Plaintiff's interest in the property, and that Defendants' actions in attempting to bar Plaintiff from either selling or renting the property are illegal. *Id*. at 8. Counts II and III allege breach of the modification agreement and breach of the duty of good faith and fair dealing as to the modification agreement. *Id*. at 8–11. Plaintiff alleges in Count IV, which is titled "Equitable Estoppel," Defendants should be estopped from circumventing and ignoring the modification agreement. *Id*. at 11–13. Count V seeks damages for Defendant's unjust enrichment resulting from Plaintiff's repairs and improvements made to the property. *Id*. at 13. Finally, Count VI seeks to quiet title to the property, which Plaintiff alleges he owns. *Id*. at 14–15.

## LEGAL STANDARD

A complaint withstands dismissal under Rule 12(b)(6) if the alleged facts state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[3]

---

[3] After *Twombly* and *Iqbal*, the standard for dismissal was clarified as no longer whether "it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief" as stated in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). (Emphasis not in original). *Conley* has been deemed abrogated with respect to this phrase. *See, e.g.*, *Beem v. Ferguson*, 713 F. App'x 974, 979 n.2 (11th Cir. 2018). "The phrase ["no set of facts"] is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has

All facts are accepted as true and viewed in the light most favorable to the Plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Documents may be considered as long as they are central to, referenced in, or attached to the complaint, as well as matters judicially noticed. *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Documents attached to a motion to dismiss may also be considered without converting the motion into one for summary judgment if the documents are (1) central to the plaintiff's claim, and (2) undisputed (if their authenticity is not challenged). *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

## DISCUSSION

In ruling on the motion to dismiss, the Court considers the three documents attached to the Defendants' motion: (1) the trustee's deed dated October 10, 2018 (Dkt. 22-1); (2) the modification agreement effective November 1, 2019 (Dkt. 22-2); and (3) the settlement agreement titled "Confidential Settlement Agreement and Release of Claims," which was executed late July 2021 (Dkt. 22-3). The modification and settlement agreements are central to Plaintiff's claims as Plaintiff seeks a declaration of his rights under both contracts. All of the remaining counts focus on recovery for breaching or ignoring the modification agreement. The

---

been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563.

trustee's deed is central to the quiet title count as the recorded conveyance of the property.

Defendants move to dismiss the entire complaint based on two overarching issues. First, Defendants contend the modification agreement did not transfer ownership of the property from Wilmington Trust to Plaintiff, despite its language identifying Plaintiff as the property owner. Instead, they claim Wilmington Trust remains the property owner per the bankruptcy trustee's 2018 deed. Second, Defendants argue that the settlement agreement in the separate lawsuit confirms the property was not transferred to Plaintiff after October 2018 because the settlement agreement of July 2021 acknowledges and refers to the 2018 trustee's deed.

### ***The Trustee's Deed***

The nature of the debtor's interest in the property is determined by state law. *In re Givans*, 623 B.R. 635, 640 (Bankr. M.D. Fla. 2020). The parties do not dispute that Plaintiff as the debtor was the owner of the property at the time he filed bankruptcy. Dkt. 19 ¶ 7; Dkt. 22 at 2.

The promissory note on the property was discharged in bankruptcy, but the lien remained. Dkt. 19 ¶ 8.[4] As part of Plaintiff's bankruptcy, the Chapter 7

---

[4] The lien modification agreement, effective November 1, 2019, provides that the "Lien Holder acknowledges that the mortgage loan related to the Property has been discharged. Even though the Property Owner's personal liability on the note is discharged, the terms of the Lien

6

trustee conveyed the subject real property to Defendant Wilmington Trust by "Trustee's Deed" dated October 10, 2018. Dkt. 19 ¶ 9; Dkt. 22-1. The deed was recorded on January 22, 2019. *Id*.

The deed names as grantor Angela Welch, who was the Chapter 7 bankruptcy trustee for Plaintiff's bankruptcy estate. Dkt. 22-1 at 1. The grantee is Wilmington Trust. *Id*. The deed appears to contain words of conveyance consistent with Florida law.[5] *See* Fla. Stat. § 689.07(1). In the bankruptcy case, the bankruptcy trustee filed the settlement statement and deed confirming the transfer. *In re Ivan Amnay*, No. 8:17-bk-6159-CPM at Dkt. 300. In any event, it is undisputed by the parties here that the deed conveyed the property to Wilmington Trust. The deed is central to, although unsupportive of, Plaintiff's claims because it establishes ownership in Wilmington Trust.

As aptly stated by Defendants, the dispute between the parties focuses on whether the lien modification agreement transferred ownership of the property to Plaintiff. Dkt. 22 at 9 (citing to Dkt. 19 ¶¶ 22, 37, 46, 53, 68). Plaintiff has not

---

Documents remain in effect. Lien Holder continues to have an enforceable lien on the Property." Dkt. 22-2 at 3. The agreement defines the lien holder as SPS, and the property owner as Plaintiff. *Id*.

[5] "This conveyance is a sale free and clear of all liens and is being executed by the Bankruptcy Trustee pursuant to Order Granting Trustee's Emergency Motion for Order (A) Authorizing Trustee to Sell Real Property Free and Clear of Liens, Claims, Encumbrances, and Interests Pursuant to 11 U.S.C. § 363(B), (F), and (M) . . . TO HAVE AND TO HOLD the same unto Grantee . . . all right, title, and interest seized and possessed by the Trustee." Dkt. 22-1 at 2.

7

alleged, and Defendants have not provided, any document other than the modification agreement which might convey the property.

### *The Lien Modification Agreement (Counts II, III, and VI)*

After the conveyance in October 2018, Wilmington Trust, with the assistance of Defendant SPS, rented out the property. Dkt. 19 ¶ 10. As recited above, about one year later, on November 1, 2019, Plaintiff and SPS entered into the "Lien Modification Agreement" to "modify the lien and payments due under the loan." *Id*. The modification agreement was recorded on November 25, 2019. Dkt. 22-2.

The modification agreement names Plaintiff as the "property owner." Dkt. 22-2 at 3. SPS is the "lien holder." *Id*. The agreement purports to modify the terms of the loan made to Plaintiff in 2007 for the purchase of the property. Plaintiff represents in the agreement that there has been no change in the ownership since 2007 and that the property is not in a state of disrepair. *Id*. The written modification agreement is at odds with the trustee's deed as to who is the owner. *Compare* Dkt. 22-2 at 3 and Dkt. 22-1 *with* Dkt. 19 ¶¶ 10, 11, 13.

In Counts II and III, Plaintiff alleges breach of the modification agreement and breach of the duty of good faith and fair dealing, respectively. Dkt. 19 at 8–11. To state a claim for breach of contract, the plaintiff must allege a valid contract exists, a material breach of that contract, and damages resulting from that

breach.  *Rhodes v. Embry-Riddle Aeronautical Univ., Inc.*, 513 F. Supp. 3d 1350, 1357 (M.D. Fla. 2021).  Count II fails to allege an anticipatory breach or repudiation and damages.  That Defendant SPS "den[ied] the continued modification" and took "the position the contract no longer exists" does not amount to anticipatory breach absent facts to support these statements.  *See* Dkt. 19 ¶¶ 38, 39.  Even if Plaintiff had alleged sufficient facts to support anticipatory breach, he has not articulated what damages he suffered.  The modification agreement purports to obligate Plaintiff to payments, and the failure to recognize the agreement would excuse Plaintiff from making payments, which would not cause Plaintiff damages.  Count II fails to allege sufficient facts.

Under Florida law, the implied covenant of good faith and fair dealing exists in conjunction with every contract.  *Degutis v. Fin. Freedom, LLC*, 978 F. Supp. 2d 1243, 1263 (M.D. Fla. 2013) (citing *Cnty. of Brevard v. Miorelli Eng'g, Inc.*, 703 So. 2d 1049, 1050 (Fla. 1997)); *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 548 (Fla. 2012) (citing *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999)).  Absent the breach of an express contract provision, the breach of this implied duty cannot be maintained.  *Burger King*, 169 F.3d at 1316.  Because Plaintiff has not sufficiently pled a breach of contract claim in Count II, he has not shown the breach of the implied duty of good faith and fair

dealing is connected to a breach of an express provision of the modification agreement. Count III is therefore dismissed.

Count VI seeks to quiet title to the property pursuant to section 65.021, Florida Statutes. The party seeking to quiet title must establish that party's valid title and the invalidity of the defendant's title. *Stark v. Frayer*, 67 So. 2d 237, 239–40 (Fla. 1953) (setting forth elements of quiet title cause of action); *Barclay v. Robert C. Malt & Co.*, 985 So. 2d 53, 54 (Fla. 4th DCA 2008) (stating party must have title to bring an action to quiet title).[6]

Plaintiff has failed to allege he is the valid title holder. Plaintiff states he "conveyed the Property to Defendant Wilmington by Trustee's Deed," which was duly recorded. Dkt. 19 at 3. His claim to title rests solely on the identification of him as the property owner in the modification agreement. The modification agreement, however, does not contain words of conveyance as required by Florida law. *See In re W. Lakeland Land Co.*, 216 B.R. 892, 897 (Bankr. M.D. Fla. 1998) (citing Fla. Stat. § 689.01 and stating interest in real property cannot be conveyed other than by deed). Without a proper deed or words of conveyance—for example "has granted, bargained and sold to the said party of the second part, her or his heirs and assigns forever, the following described land"—the modification

---

[6] *See also Barrows v. Bank of Am., N.A.*, No. 8:14-cv-2121-T-33TGW, 2014 WL 7337429, at *2 (M.D. Fla. Dec. 23, 2014) (stating elements of cause of action for quiet title and citing *Stark*).

10

agreement does not transfer property from Wilmington Trust to Plaintiff. *See* Fla. Stat. § 689.02(1) (form of warranty deed). Plaintiff has also failed to establish by factual allegations that Defendants' interest in the property is invalid. *Lane v. Guar. Bank*, 552 F. App'x 934, 936 (11th Cir. 2014) (citing *Stark*). According to the Pinellas County Property Appraiser, the most recent recording on this property was the trustee's deed whereby the trustee of Plaintiff's bankruptcy deeded the property to Defendant Wilmington Trust. *See* officialrecords.mypinellasclerk.org/Details/GetDocumentsby BookPage/OR/20403/2419.

Count VI is therefore dismissed. Should Plaintiff replead this count, he must allege facts showing he holds a valid title to the property. In Florida, land is conveyed by deed. Plaintiff must set forth precisely how he obtained the land in fee simple after his bankruptcy trustee conveyed it to Wilmington Trust.

***The Settlement Agreement (Counts I, IV, and V)***

Counts I, IV, and V rely on both the modification agreement and the later settlement agreement executed in another case. A lawsuit filed by Plaintiff in Florida state court in January 2021was settled in July 2021. Dkt. 22-3. As part of the settlement, Plaintiff signed a "Confidential Settlement Agreement and Release of Claims." *Id*. SPS argues the settlement agreement released all claims arising out of the trustee's deed and the modification agreement. Plaintiff disagrees.

11

Each party relies on the same language to support their positions:

> 2. **RECITALS** — This Agreement is entered into with reference to the following facts:
>
> . . . .
>
> B. . . . Effective as of November 11, 2019, Borrower and SPS entered into a Loan Modification Agreement (the "Modification Agreement") with respect to the Note [$134,400.00 note in favor of GreenPoint Mortgage Funding, Inc. on July 5, 2007] and Mortgage [securing note and dated July 5, 2007].
>
> . . . .
>
> C.  On January 20, 2021, Borrower [Plaintiff] filed an Initial Complaint against SPS, J.P Morgan Chase Bank, N.A., . . . in the Sixth Judicial Circuit in an for Pinellas County, Florida under Case No. 21-000269-CI ("the Action"). . . .These recitals, actions, proceedings and litigated matters (along with the facts, actions and proceedings related thereto) as to Borrower and SPS only, for purposes of this Agreement, shall be referred to collectively as the "Dispute." . . . the Parties desire to fully and amicably compromise, finally settle, and fully release all claims, disputes, and differences related to the Dispute, pursuant to the terms and conditions of this Agreement. In consideration of the facts, acknowledgements, agreements, general release and promises contained in this Agreement, and for other good and valuable consideration, the receipt of which is acknowledged by each Party . . .

Dkt. 22-3 at 2.  Defendants contend the "Dispute" as defined in paragraph 2.C. includes the present claims in this instant lawsuit, and Plaintiff takes the opposite position.  The Court will not engage in contract interpretation of a release signed in another lawsuit at this stage of dismissal.  The release identifies the original 2007 note and mortgage and the loan modification agreement in 2.B.  Whether claims Plaintiff now asserts are included in the release of claims in the July 2021 settlement agreement is best left after further factual development in this record.

Such development, however, is permitted only if Plaintiff has stated claims for relief.

Count I for declaratory judgment under Chapter 86 of the Florida Statutes is insufficient. Although not raised by either party, the removal of this case from state court requires that this Court construe the claim as an action under the federal Declaratory Judgment Act, 28 U.S.C. §2201. *See Southshore Hosp. Mgmt., LLC v. Indep. Specialty Ins. Co.*, No. 8:21-cv-696-KKM-AEP, 2022 WL 219026, at *4 (M.D. Fla. Jan. 25, 2022); *Café La Trova LLC v. Aspen Specialty Ins. Co.*, 519 F. Supp. 3d 1167, 1174 (S.D. Fla. 2021) (citation omitted).[7] For many of the same reasons the count for quiet title fails to state a clam, the Court finds that the claim for declaratory relief is speculative and does not allege a present, ascertainable, and actual controversy. Count I is therefore dismissed.

Florida law recognizes equitable estoppel (Count IV) as a doctrine that "functions as a shield, not a sword, and operates against the wrongdoer, not the victim." *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1077 (Fla. 2001). Various courts suggest that equitable estoppel is not an independent cause of action. *Millennium Funding, Inc. v. 1701 Mgmt. LLC*, No. 21-cv-20862-

---

[7] *See also Harvest Bible Chapel of Orlando, Inc. v. Grace Found.*, No. 6:16-cv-1872-Orl-22KRS, 2016 WL 11735381, at *2 (M.D. Fla. Dec. 15, 2016) (ordering plaintiff to file amended complaint in removed case alleging declaratory relief exclusively under the Florida Statute and determining federal district court must apply federal Declaratory Judgment Act).

13

Bloom/Otazo-Reyes, 2021 WL 5882999, at *17 (S. D. Fla. Dec. 12, 2021) (listing cases). To the extent Count IV could be construed as a claim for promissory estoppel, Plaintiff may replead the count. *See Univ. of Miami v. Intuitive Surgical, Inc.*, 166 F. App'x 450, 454 (11th Cir. 2006) (noting promissory estoppel exists only where the written contract does not cover the promises made, citing Florida law); *White Holding Co. v. Martin Marietta Materials, Inc.*, 423 F. App'x 943, 947 (11th Cir. 2011) (listing elements of promissory estoppel and citing *W.R. Grace & Co. v. Geodata Servs., Inc.*, 547 So. 2d 919, 924 (Fla. 1989)).

Under Florida law, unjust enrichment (Count V) requires that the plaintiff conferred a benefit on the defendant, the defendant knows of the benefit and accepts and retains it, and the circumstances would make it inequitable for the defendant to retain the benefit. *Rhodes*, 513 F. Supp. 3d at 1359 (citing Florida law). The pleading is unclear as to what facts support each of these elements. Because the parties dispute the existence of a valid contract, Plaintiff may replead unjust enrichment in the alternative. *Id*.

Accordingly, Defendants' motion to dismiss (Dkt. 22) is granted without prejudice. Should Plaintiff choose to replead, a second amended complaint must be filed within fourteen (14) days.

**DONE AND ORDERED** at Tampa, Florida, on April 7, 2022.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO**:
Counsel of record