UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IVAN AMNAY,

    Plaintiff,

v.                                                  CASE NO. 8:21-cv-2610-WFJ-CPT

SELECT PORTFOLIO SERVICING,
INC.; WILMINGTON TRUST, N.A.;
and DOES 1-10 INCLUSIVE,

    Defendants.
_____/

## ORDER

Before the Court is Defendants' Motion to Dismiss Second Amended Complaint (Dkt. 34) and Plaintiff's response (Dkt. 41).[1] After careful consideration of the allegations of the second amended complaint (Dkt. 33), the arguments of counsel, and the applicable law, the Court concludes the motion should be granted and Plaintiff's Second Amended Complaint should be dismissed without leave to amend.

**PERTINENT ALLEGATIONS**

The Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of Plaintiff.[2] As set forth in the prior order of dismissal, Dkt.

---

[1] The motion is filed by Defendants Select Portfolio Servicing, Inc. and Wilmington Trust, N.A.
[2] *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

28, Plaintiff owned non-homestead residential property in Palm Harbor, Florida, Dkt. 33 ¶ 8. The property was encumbered by a mortgage. *Id*. ¶ 9. Although the note was discharged in Plaintiff's bankruptcy, the lien remained. *Id*. On October 10, 2018, the bankruptcy trustee deeded the property to Defendant Wilmington Trust, N.A. ("Wilmington Trust"). *Id*. ¶ 10. The trustee's deed was recorded on January 22, 2019. *Id*.

Plaintiff alleges the property fell into disrepair while being rented out by Wilmington Trust, as lessor, with the assistance of Defendant Select Portfolio Servicing, Inc. ("SPS"). *Id*. ¶ 11. Plaintiff contends that "SPS approached Plaintiff with an offer to modify the lien and payments due under the loan, including waiving arrearages, *and making the Plaintiff the owner of the Property (subject to Defendant's lien)*, if Plaintiff would agree to take over the care and maintenance of the Property." *Id*. (emphasis added).[3] Plaintiff claims he agreed to take over the repairs on the condition he could rent the property to tenants and retain rental payments. *Id*. Plaintiff alleges he made "substantial repairs" to the property, including replacing the roof, installing a fence, repairing the plumbing, and painting. *Id*.

In October 2019, according to Plaintiff, SPS sent him the written Lien Modification Agreement ("the modification agreement") in accordance with the

---

[3] The italicized language did not appear in the prior amended complaint.

parties' agreement for Plaintiff to make repairs, rent the property, and keep the rental payments. *Id.* ¶ 12.[4] Plaintiff alleges, as he did in the prior amended complaint, that the modification agreement "effected a transfer of ownership of the Property to Plaintiff by its very terms." *Id.* ¶ 12. The term Plaintiff refers to is the identification of Plaintiff as the "property owner." *Id.* ¶ 13. To this end, the latest complaint adds the following:

> Plaintiff . . . reasonably relied upon Defendant's affirmative representation in the Lien Modification Agreement that he (Plaintiff) was the property owner in agreeing to enter into the Lien Modification Agreement and expend his personal time and funds for improvements to the Property, and also understood that the identification of himself as the 'Property Owner' effected a conveyance of the Property to Plaintiff subject to the Defendants' lien, and also modified the October 10, 2018, Trustee's Deed as well.

*Id.* ¶ 14.

Plaintiff rented out the property in late November 2019 and used the rental income to make the payments under the modification agreement for almost two years. *Id.* ¶¶ 16–19. When the tenant's lease expired, Plaintiff attempted to rent out the property through a broker. *Id.* ¶ 21. Wilmington Trust and SPS, however, took the position that the modification agreement was "no longer in place as the result of a Settlement Agreement entered into between Plaintiff and Defendant SPS

---

[4] The agreement is signed by Plaintiff and by Defendant "Select Portfolio Servicing, Inc., Attorney in Fact for Wilmington Trust, NA[.]" Dkt. 33 ¶ 12; Dkt. 1-4 at 18–19.

3

in a separate civil action." *Id*. Plaintiff alleges this settlement agreement does not modify, release, or terminate the modification agreement. *Id*. ¶¶ 21, 22.

In his Second Amended Complaint, like his earlier amended complaint, Plaintiff's Count I seeks a declaration that Plaintiff is the owner of the property, that the settlement agreement in a separate case has no effect on Plaintiff's interest in the property, and that Defendants' actions in attempting to bar Plaintiff from either selling or renting the property are illegal. *Id*. at 9 (*ad damnum* clause to Count I). Counts II and III separately allege anticipatory breach or repudiation and breach of the duty of good faith and fair dealing as to the modification agreement. *Id*. at 9–13. Lastly, Counts IV and V allege promissory estoppel and unjust enrichment, respectively. *Id*. at 13–16.

## LEGAL STANDARD

A complaint withstands dismissal under Rule 12(b)(6) if the alleged facts state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). All facts are accepted as true and viewed in the light most favorable to the Plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

At the dismissal stage, a court may consider matters judicially noticed, such as public records, without converting a defendant's motion to one for summary judgment. *See Universal Express, Inc. v. S.E.C.*, 177 F. App'x 52, 52 (11th Cir.

2006).  Additionally, documents may be considered at the dismissal stage if they are central to, referenced in, or attached to the complaint.  *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).  Documents attached to a motion to dismiss may also be considered if the documents are (1) central to the plaintiff's claim, and (2) undisputed (if their authenticity is not challenged).  *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

## DISCUSSION

The crux of this action centers around the modification agreement's naming Plaintiff, not Wilmington Trust, as the property owner.  *See* Dkt. 22-2 (modification agreement).  The public records show that the last recorded document of conveyance is the trustee's deed, which identifies the titleholder as Wilmington Trust.  *See* Dkt. 22-1 (deed).  Neither party contests the validity of the trustee's deed and its effective transfer of title.  Although Plaintiff continues to rely on the modification agreement as "effect[ing] a transfer of ownership,"[5] he appropriately did not attempt to restate a claim to quiet title.

Defendants move to dismiss the Second Amended Complaint by challenging the inconsistencies between Plaintiff's positions and the actual agreements against

---

[5] *See* Dkt. 33 ¶ 12; *see also id.* ¶ 14 (Plaintiff "understood that the identification of himself as the 'Property Owner' effected a conveyance of the Property to Plaintiff subject to the Defendants' lien, and also modified the October 10, 2018 Trustee's Deed as well."); ¶ 53 ("Plaintiff was promised to be the Property Owner by Defendants, which promise is reflected and identified in the Lien Modification Agreement.").

5

the backdrop of applicable law.  Defendants contend that 1) the modification agreement did not transfer ownership of the property to Plaintiff, and 2) the settlement agreement in the separate lawsuit does not divest Plaintiff of ownership because Plaintiff never had any ownership interest in the property.  Dkt. 34 at 5; *see* Dkt. 22-3 (settlement agreement).

### *Count I—Declaratory Relief*

In this removed case based on diversity, Count I seeks a declaratory judgment under the federal Declaratory Judgment Act, 28 U.S.C. § 2201. Defendants argue that the declaratory relief count seeks the same relief as a claim to quiet title—a declaration that Plaintiff is the owner of the property.  Dkt. 35 at 9. Plaintiff responds that Defendants "have simply asserted disagreement with the admittedly disputed facts relating to a written contract and the effect thereof."  Dkt. 41 at 6.  Relying on the presence of disputed facts, Plaintiff argues an "actual controversy" is evident and urges this Court to allow all claims to proceed to the summary judgment stage to properly resolve the disputed facts.  *Id*. at 4, 6–7.  The Court must first find, however, whether the facts as alleged state a cognizable legal claim for declaratory relief.

To state a claim for declaratory relief, a "case or controversy" must exist.  28 U.S.C. § 2201(a); *Emory v. Peeler*, 756 F.2d 1547, 1551–52 (11th Cir. 1985).  An "actual controversy" requires the alleged facts show the existence of "a substantial

6

continuing controversy between the parties having adverse legal interests." *Emory*, 756 F.2d at 1552 (citations omitted). The controversy must be "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The controversy "may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Emory*, 756 F.2d at 1552 (citations omitted).

Not only must there be an actual controversy, the case and controversy must be justiciable under Article III of the Constitution. *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1336 (Fed. Cir. 2007). Granting declaratory relief is appropriate when it will serve a useful purpose and will terminate uncertainty. *Costa Regency, L.L.C. v. HSBC Card Servs., Inc.*, No. 19-cv-1362-T-33JSS, 2019 WL2567926, at *3 (M.D. Fla. June 21, 2019). A useful purpose "clarif[ies] and settl[es] the legal relations in issue." *Traturyk v. Western-Southern Life Assurance Co.*, 6:15-cv-1347-Orl-40TBS, 2016 WL 727546, at *3 (M.D. Fla. Feb. 24, 2016). In deciding whether to entertain a claim for declaratory relief, the Court has "ample discretion." *Costa Regency,* 2019 WL2567926, at *3.

Plaintiff is correct that bringing an action for anticipatory breach of contract does not preclude it from seeking a declaration of rights and obligations under the

contract. Dkt. 41 at 8.[6] The issue, however, is whether the declaratory relief count, if valid, will serve a useful purpose when another claim will more effectively resolve the issues. *See Bryan v. Florencia Park LLC*, No. 8:19-cv-1197-T-02AEP, 2019 WL 4394002, at *3 (M.D. Fla. Sept. 13, 2019) (dismissing declaratory relief count as unnecessary).

Plaintiff asserts the actual controversy is the discrepancy between the trustee's deed showing the property owner as Wilmington Trust and the Lien Modification Agreement identifying Plaintiff as the property owner. Dkt. 33 ¶ 27. To establish an actual controversy, Plaintiff relies on a sentence taken out of context from this Court's prior order: "The written modification agreement is at odds with the trustee's deed as to who is the owner." *Id*. (quoting Dkt. 28 at 8). Plaintiff asserts that this statement acknowledges a disputed fact, thereby avoiding a dismissal.

The identification of Plaintiff as property owner in the modification agreement, however, does not by itself create a controversy as to who owns the property. First, there are no words of conveyance in the modification agreement.

---

[6] *Compare Rock Custom Homes, Inc. v. Am. Zurich Ins. Co.*, No. 2:19-cv-607-FtM-38NPM, 2019 WL 4477819, at *2 (M.D. Fla. Sept. 18, 2019) (permitting declaratory judgment claim to proceed with breach of contract claim because a redundant claim should not be dismissed if valid) *with Goeseke v. Arch Specialty Ins. Co.*, No. 20-cv-24878-DLG, 2021 WL 2459570, at *3 (S.D. Fla. Feb. 10, 2021) (dismissing declaratory judgment claim when contractual claim better addressed the parties' factual disputes).

*See* Dkt. 28 at 10.[7] Second, Plaintiff even admits that title was not conveyed to him—only that Defendants promised they would give him title if he maintained the property. There is nothing in the language of the modification agreement, or any other written document cited by the parties, that embodies such an agreement. The modification agreement reduces the payments that Plaintiff owes on the mortgage lien. Additionally, neither Florida's public records (i.e., the trustee's deed) nor basic Florida property law suggests Plaintiff (and not Wilmington Trust) holds title to the property.[8]

Plaintiff claims, nevertheless, that he has an interest in the property, as beneficial owner, which must be decided by declaratory relief. Dkt. 41 at 3−4 (citing *First Union Nat'l Bank of Fla. v. Ford*, 636 So. 2d 523, 527 (Fla. 5th DCA 1993)). The *Ford* case relied upon by Plaintiff involved a complicated lessor-lessee relationship between a bank as titleholder and trustee for individual investors and Brevard County as lessee for its governmental offices. 636 So. 2d at

---

[7] "The modification agreement, however, does not contain words of conveyance as required by Florida law. Without a proper deed or words of conveyance—for example 'has granted, bargained and sold to the said party of the second part, her or his heirs and assigns forever, the following described land'—the modification agreement does not transfer property from Wilmington Trust to Plaintiff." Dkt. 28 at 10–11 (internal citations omitted).
[8] To further support an actual controversy, Plaintiff points to a second sentence in this Court's prior order: "the parties dispute the existence of a valid contract." Dkt. 41 at 4 (citing Dkt. 28 at 14). Plaintiff contends this statement inherently recognizes disputed facts exist which this Court may not resolve on a motion to dismiss. *Id.* This phrase, however, simply recognizes that unjust enrichment may be pled in the alternative to a breach of contract claim because the foundation of unjust enrichment rests on the nonexistence of a valid contract.

9

523–24. The appellate court held that the County was the beneficial owner of the property including improvements and therefore immune from taxation both as owner and as lessee under a specific Florida statute pertaining to property of the state used for governmental purposes. *Id*. at 527. The instant case shares nothing in common with *Ford*. Here, there is no written lease agreement, nor issue about payment of taxes. Independent research by this Court has not revealed an analogous case to support Plaintiff's position that he is the property owner.

      Factual disputes about whether the parties had an agreement underlying or apart from the written modification agreement to make Plaintiff the owner and title holder do not give rise to an actual controversy. Plaintiff does not plausibly allege Plaintiff is the property owner instead of Wilmington Trust per the deed. Plaintiff fails to allege a substantial continuing controversy that is not conjectural or contingent demonstrating a bona fide, present need for declaratory relief. *Cf. Rooney v. Bank of Am.*, No. 6:13-cv-641-Orl-18DAB, 2013 WL 12155498, at *3–4 (M.D. Fla. Sept. 19, 2013) (granting motion to dismiss quiet title and analogous declaratory relief claims with prejudice where plaintiff could not plausibly allege validity of title or cloud on title, regardless of status of any foreclosure action). No useful purpose would be served by issuing an advisory opinion on alleged promises concerning real property that are not reduced to writing.

Accordingly, the Court finds that the claim for declaratory relief is speculative and does not allege a present, ascertainable, and actual controversy. Any amendment would be futile because the underlying facts on which Plaintiff relies are not the proper subject of relief. *See Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007); *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262 (11th Cir. 2004). Count I is therefore dismissed with prejudice.

### *Counts II and III—Anticipatory Breach and Breach of Good Faith and Fair Dealing*

In Counts II and III, Plaintiff alleges anticipatory breach of the modification agreement and breach of the duty of good faith and fair dealing, respectively. Dkt. 33 at 9–13. The Court first considers Plaintiff's Count II anticipatory breach claim. To state a claim for anticipatory breach or repudiation, the factual allegations must show the breach "occurr[ed] before the time has come when there is a present duty to perform as the result of words or acts evincing an intention to refuse performance in the future." *Dragon Jade Int'l, Ltd. v. Ultroid, LLC*, No. 8:17-cv-2422-T-27TBM, 2018 WL 794795, at *4 (M.D. Fla. Jan. 23, 2018) (quoting *Alvarez v. Rendon*, 953 So. 2d 702, 709 (Fla. 5th DCA 2007)). A repudiation "may be evidenced by words or voluntary acts but the refusal must be distinct, unequivocal, and absolute." *Id*. (quoting *Mori v. Matsushita Elec. Corp. of Am.*, 380 So. 2d 461, 463 (Fla, 3d DCA 1980)).

11

A claim for damages arises for anticipatory breach "[w]here an obligor repudiates a duty before he has committed a breach by non-performance and before he has received all of the agreed exchange for it." *Hosp. Mortg. Grp. v. First Prudential Dev. Corp.*, 411 So. 2d 181, 182 (Fla. 1982) (citation omitted); *Haelterman v. Haelterman*, 846 So. 2d 1229, 1230 (Fla. 2d DCA 2003) (citing *Hosp. Mortg. Grp.*, 411 So. 2d at 182). The repudiation of the contract must be absolute and without qualification; any ultimatums to refuse to honor the agreement must be issued "in no uncertain terms." *See Sheppard v. Bank of Am., NA*, 542 F. App'x 789, 792 (2013) (affirming district court's dismissal of anticipatory repudiation claim under Georgia law).[9]

Here, the modification agreement imposes an obligation on Plaintiff to make fixed installment payments to Defendants. Dkt. 22-2 at 3−4. Plaintiff attempts to allege Defendants somehow repudiated the modification agreement, thereby causing damage to Plaintiff. Dkt. 33 at 10. In reviewing the pertinent allegations, the Court finds the facts as alleged do not state a claim for repudiation of the modification agreement.

Plaintiff alleges that "Defendant SPS approached Plaintiff with an offer to modify the lien and payments due under the loan . . . making Plaintiff the owner of

---

[9] As noted earlier, Florida law requires similarly that words or acts of repudiation be distinct, unequivocal, and absolute.

12

the Property (subject to Defendant's lien)" in exchange for maintaining the property. *Id.* ¶ 11. Plaintiff alleges he agreed to this offer. *Id.* According to Plaintiff, the modification agreement which followed "effected a transfer of ownership." *Id.* ¶ 12. Plaintiff alleges "he relied upon Defendant's affirmative representation in the Lien Modification Agreement that he (Plaintiff) was the property owner . . . and also understood that the identification of himself as the 'Property Owner' effected a conveyance of the Property to Plaintiff subject to the lien and also modified [the Trustee's Deed]." *Id.* ¶ 14. These allegations fall short of establishing Plaintiff as the owner of the property. The modification agreement does not convey the property to Plaintiff, nor does it express additional representations particular to his expenditure of time for improvements to the property. Rather, the agreement reduced his monthly payments.

In Count II proper, Plaintiff makes the conclusory allegation that he "fully performed under the contract, which states that Plaintiff is the 'Property Owner.'" *Id.* ¶ 37. It is unclear what "fully performed" means other than he was making the monthly payments. The modification agreement contains Plaintiff's representation that the property is not in disrepair or condemned. Dkt. 1-4 at 15. Plaintiff specifically describes the anticipatory breach as Defendant SPS "denying the continued existence of the contract based on an irrelevant agreement in another matter, and taking the position that Plaintiff is not the 'Property Owner.'" Dkt. 33

13

¶ 38. The "irrelevant agreement" is the settlement agreement entered in a separate action.  Dkt. 22-3.[10]

These allegations are somewhat nonsensical.  Defendants do not owe an obligation to Plaintiff under the terms of the modification agreement.  Defendants' "repudiation" of the modification agreement would leave Plaintiff with no damages because Plaintiff's obligation to pay would be relieved.  Moreover, Defendants' position is correct—Plaintiff is not the property owner, despite the modification agreement identifying him as such.  The modification agreement did not place an obligation on Defendants to convey title and ownership to Plaintiff.

Accordingly, Count II fails to allege an anticipatory breach or repudiation of the modification agreement giving rise to damages.  Because none of the facts alleged form a basis for recovery for anticipatory breach, further amendment would be futile.  Count III must also be dismissed because under Florida law the breach of the implied duty of good faith and fair dealing does not exist apart from the breach of an express provision of the modification agreement.[11]

---

[10] A lawsuit filed by Plaintiff in Florida state court in January 2021was settled in July 2021.  Dkt. 22-3.  The settlement agreement identifies the Lien Modification Agreement and contains a general release of all claims.  *Id.* at 2.

[11] *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1316 (11th Cir. 1999); *Degutis v. Fin. Freedom, LLC*, 978 F. Supp. 2d 1243, 1263 (M.D. Fla. 2013); *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 548 (Fla. 2012) (citing *Burger King Corp.*, 169 F.3d at 1315).

### *Count IV—Promissory Estoppel*

Promissory estoppel under Florida law requires a promise made which the promisor should reasonably expect to induce action, which did induce such action, and that injustice cannot be avoided unless the promise is enforced. *White Holding Co. v. Martin Marietta Materials, Inc.*, 423 F. App'x 943, 947 (11th Cir. 2011) (first citing *W.R. Grace & Co. v. Geodata Servs., Inc.*, 547 So. 2d 919, 924 (Fla. 1989); and then citing *Mt. Sinai Hosp. of Greater Miami, Inc. v. Jordan*, 290 So. 2d 484, 486 (Fla. 1974)). "Promissory estoppel is not available as a remedy when parties have a written contract addressing the relevant issues; the contract's silence about particular details is not controlling as long as the contract purports to address broadly the disputed issues." *Univ. of Miami v. Intuitive Surgical, Inc.*, 166 F. App'x 450, 454 (11th Cir. 2006) (citing Florida caselaw).

Plaintiff asserts Defendants promised him that he would be the property owner and this promise is reflected in the modification agreement. Dkt. 41 at 10. He specifically alleges: "Plaintiff was promised to be the Property Owner by Defendants, which promise is reflected and identified in the Lien Modification Agreement." Dkt. 33 ¶ 53. Plaintiff contends he performed under the agreement and relied upon Defendants' representations that he could rent the property as the owner. *Id.* ¶ 54 ("Plaintiff performed as required under the Lien Modification Agreement, and relied upon the representations . . . permitting Plaintiff to rent the

15

Property"); Dkt. 41 at 10.  According to Plaintiff, in reliance on the representations and agreement, he made improvements to the property at his own expense.  Dkt. 33 ¶ 58; Dkt. 41 at 11.  He alleges he made timely payments under the agreement and Defendants should be estopped to deny he is the owner.  Dkt. 33 ¶ 58; Dkt. 41 at 11–12.

As alleged by Plaintiff, the promise to make Plaintiff the owner is directly covered by the modification agreement because it "identified" him as owner.  This defeats any claim for promissory estoppel.  The written modification agreement addresses the issue of ownership by Plaintiff's admissions—the identification of him as owner manifests the promise.  Plaintiff fails to allege a promise apart from the written agreement.  As aptly pointed out by Defendants, Plaintiff did not plead an oral promise to convey the real property.  Dkt. 34 at 16−17.  Any such attempt would run afoul of the statute of frauds.  *DK Arena, Inc. v. EB Acquisitions I, LLC*, 112 So. 3d 85, 86 (Fla. 2013) (holding that the doctrine of promissory estoppel is not an exception to the statute of frauds).  Count IV is dismissed with prejudice.

### *Count V—Unjust Enrichment*

To allege unjust enrichment under Florida law, a plaintiff must show he conferred a benefit on the defendant, the defendant accepted and retained the benefit, and inequity would result without the defendant paying the value of the benefit to the plaintiff.  *Johnson v. Catamaran Health Sols., LLC*, 687 F. App'x

16

825, 830 (11th Cir. 2017) (citing Florida caselaw and affirming dismissal of unjust enrichment claim).  Plaintiff alleges Defendants were unjustly enriched by the substantial repairs and improvements he made to the property.  Dkt. 33 ¶ 62.  Yet, by Plaintiff's own admission he retained the rental income for two years and gained reduced monthly payments under the terms of the modification agreement.  *Id*. ¶¶ 16–20; Dkt. 22-2.  The Court concludes per Plaintiff's own allegations that Defendants gave adequate consideration to Plaintiff for the benefit conferred.  *See Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331–32 (Fla. 5th DCA 2007) (holding claim for unjust enrichment fails when defendant has given adequate consideration).  Count V is therefore dismissed with prejudice.

## CONCLUSION

Accordingly, Defendants' Motion to Dismiss (Dkt. 34) is granted.  Plaintiff's Second Amended Complaint (Dkt. 33) is dismissed with prejudice.  The Clerk is directed to close the case.

**DONE AND ORDERED** at Tampa, Florida, on August 19, 2022.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO**:
Counsel of record